UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JESUS TOSCANO

        Plaintiff,                  CIVIL ACTION NO. 08-125140

        v.                           DISTRICT JUDGE JOHN CORBETT O'MEARA

COMMISSIONER OF              MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION**

On his current application for social security disability benefits, plaintiff received a partially favorable decision granting him benefits effective as of January 21, 2008. In his complaint, he seeks judicial review of the defendant's decision denying plaintiff's application for social security disability benefits from June 1, 2004 until January 21, 2008. Plaintiff was insured for disability benefits (Title II) through December 1, 2008. Plaintiff was found to be disabled as of January 21, 2008, the date of the psychiatric examination he had with Dr. Feldstein. Plaintiff seeks to be determined disabled as of June 4, 2004 when he fractured his wrist.

Plaintiff went through the ninth grade in Mexico and was determined by the ALJ to be functionally illiterate in English. Plaintiff was 43 at the time of his alleged onset date and has past relevant work as a painter. The defendant found that plaintiff had history of left wrist fracture, status post three surgeries, right carpal tunnel syndrome, status post surgery, and

depression. (Tr. 22) His impairments did not meet or equal the Listing of Impairments. (Tr. 23) The ALJ found that during the relevant period–from June 4, 2004 to January 21, 2008, plaintiff was not disabled because he could perform simple, unskilled work with up to three steps of instructions, could lift or carry 10 pounds frequently and 20 pounds occasionally, up to a third of the work day with the right, dominant hand; stand or walk, with normal breaks, for six hours of an 8 hour day, sit for a total of six hours, push pull with the above weight restrictions, perform bilateral manual dexterity, limited fingering and handling, and with no vibrations. Plaintiff contends that this determination is not supported by substantial evidence. Defendant disagrees, and contends that substantial evidence supports the denial. For the reasons set forth in this Report, it is recommended that the decision denying benefits prior to January 21, 2008 be affirmed.

**Standard of Review**

The issue before the court is whether to affirm the Commissioner's determination. In Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989), the court held that:

> Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L. Ed. 2d 126 (1938). The scope of our review is limited to an examination of the record only. We do not review the evidence *de novo*, make credibility determinations nor

> weigh the evidence. Reynolds v. Secretary of Health and Human Services, 707 F.2d 927 (5th Cir. 1983).

Brainard, 889 F.2d at 681.

To establish a compensable disability under the Social Security Act, a claimant must demonstrate that he is unable to engage in any substantial gainful activity because he has a medically determinable physical or mental impairment that can be expected to result in death or has lasted, or can be expected to last, for at least 12 continuous months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a). If a claimant establishes that he cannot perform his past relevant work, the burden is on the Commissioner to establish that the claimant is not disabled by showing that the claimant has transferable skills which enable him to perform other work in the national economy. Preslar v. Secretary of HHS, 14 F.3d 1107 (6th Cir. 1994); Kirk v. Secretary of HHS, 667 F.2d 524, 529 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).

**Background**

Plaintiff testified that he completed the ninth grade in Mexico, came to this country in 1988, and the ALJ found that he was unable to communicate in English, and thus was deemed illiterate. He can read and write some in Spanish. Disability was based on physical as well as mental impairments. (Tr. 27)

The administrative law judge found that before January 21, 2008, plaintiff was able to perform a limited range of 1,2, or three-step jobs at the light exertional level. He had no psychiatric treatment prior thereto, but on January 21, 2008, plaintiff was examined for disability at the request of his lawyer, by Richard Feldstein M.D., a board certified psychiatrist. (Tr. 265)

Plaintiff attended the examination with an interpreter.  Dr. Feldstein found that plaintiff was 47 years old, married, the father of two children, he came to the United States from Mexico to better his life. (TR. 265)   Plaintiff described his current major problem as related to his "nerves" and states he is unable to control his emotions and has involuntary movements. Throughout the examination plaintiff appeared to the psychiatrist to be gasping and choking involuntarily.  Plaintiff stated that this difficulty in breathing and swallowing has been going on since his accident.  In addition, plaintiff described impulsive behavior and impaired judgment, stated that he was irritable and has low stress tolerance, and easily becomes angry with people. (TR 266) Plaintiff stated that he was not able to read English at all and can read only on a very limited basis in Spanish.  The examiner opined that plaintiff would have been unable to arrive at the examination without the assistance of the interpreter. His shoes were untied and he told the examiner he did not know why but believes that they were not tied because "his wife did not tell him to tie them today." According to the examiner, plaintiff presented as marginally in contact with reality. Plaintiff, while not psychotic, was quite preoccupied with himself and so inwardly directed that he had limited contact with reality. Plaintiff demonstrated significantly lowered self-worth and self-esteem. He also appeared quite intense and preoccupied and demonstrated no spontaneity and only limited verbal productivity. There were no active psychotic symptoms or indication of thought disorder. According to the examiner, plaintiff's emotions reflected depressed mood and affect along with fearfulness, anger, and emotional lability and instability. Dr. Feldstein diagnosed major depressive disorder anxiety disorder and psychological factors affecting his physical condition. (TR. 267)   His global assessment of functioning (GAF) was

rated as 45. In the opinion of the examiner, plaintiff was incapable of functioning in any occupational area and needed assistance in order to maintain stability with his day-to-day life circumstance. (TR 268)

Medically, plaintiff had undergone several surgeries for left wrist fracture after falling from a ladder in June, 2004. (Tr. 195)  The fracture was repaired surgically shortly after the injury and plaintiff was in occupational therapy from August 2004 through April 2005. (TR 140 – 95)  Plaintiff also had carpal tunnel release surgery and claimed he could not lift 2 pounds with his left, non-dominant hand. Plaintiff had a driver's license and stated he usually drove about 20 minutes to the grocery store and was assisted by friends in doing lawn work (TR 354 – 363)

Plaintiff was treated by hand surgeon Edward Burke, D.O. from February 2005 through October 2007 and was seen frequently. (Tr.269 – 341)  Plaintiff complained of numbness and tingling and exhibited loss of range of motion and marked pain. (TR 269)  A CT scan of the left wrist revealed multiple fracture lines that could potentially limit range of motion. (TR 274)  He complained of shoulder pain as well but a CT scan of the left shoulder showed no sign of acute fracture or dislocation in February 2005. (TR 272) In May 2005, plaintiff underwent a second left wrist surgery on Dr. Burke's recommendation. He recovered well and was taking only Tylenol as needed for pain. (TR281, 288, 199)  In June, 2005 plaintiff's fingers and wrist showed improvement. A July 2005 arthrogram showed focal and linear defects. (TR 292)  It was also noted that the right carpal tunnel syndrome had worsened slightly but the radial sensory response had improved. (TR 293) In September 2005 plaintiff had another surgery which was

successful in restoring the angles of the radius. (TR 297 – 300) By early November 2005, plaintiff had 80 degrees of active motion, full pronation, and 50% supination in the left wrist. (TR 305)   Dr. Burke authorized a return to restrictive level of work as of November 11, 2005. (Tr. 303, 305)   In March 2006, Dr. Burke advised plaintiff to use his left wrist as normally as possible. (TR 318)

Plaintiff was examined in April 2006, by consultive physician Dr. Cynthia Shelby–Lane. She noted decreased range of motion in the left wrist and slightly decreased (4/5) grip strength. (TR 229)  Plaintiff also had atrophy in the left forearm and wrist.  With respect to the lower extremities, he did not use a cane or assistive device to walk and had normal gait and stance. Gross and fine dexterity were bilaterally intact but he had carpal tunnel syndrome on the right. (TR 229 – 230) In April 2006, state reviewing physician Jack Kaufman, M.D. opined that plaintiff could lift up to 20 pounds occasionally 10 pounds frequently, stand/walk for 6 hours of an 8 hour day, sit for 6 hours in an 8 hour day, and push/pull without limitation. (TR 239) Dr. Kaufman opined that plaintiff had limited handling and fingering ability and should avoid use of vibrating tools.  In January 2007 a CT scan of the left wrist showed no significant changes since November 2005.  Examination showed he was doing well and EMG results showed significant nerve improvement. (TR 333)   He was continued on restrictions by Dr. Burke, limited to no more than 10 pounds and avoid repeated flexion of the wrist. (TR 337)

His mental health history begins with the psychiatric examination by Dr. Feldstein.  He had no prior hospitalizations, psychiatric or psychological treatment, and otherwise was not noted to have any mental impairment.  After Dr. Feldstein's examination, plaintiff underwent a

consulted psychiatric examination in February by Dr. Gummadi. (TR 246 – 51) According to Dr. Gummadi, plaintiff reported he was taking Xanax and a pain reliever and was not doing any household chores. Plaintiff appeared unable to take care of his basic needs. (TR 246–247) The diagnosis was major depressive disorder and the doctor opined that plaintiff was markedly limited in understanding, remembering, and carrying out complex instructions.

At the hearing in April 2008, the ALJ asked a vocational expert when or whether any jobs existed for persons such as plaintiff. The vocational expert identified unskilled light jobs such as visual inspector of which is thousand existed regionally and more than that nationally. (TR 365) If mental limitations prevented him from sustaining concentration, persistence or pace sufficient to complete a 40 hour work week, then there would be no jobs that he could do. (TR 365 – 366).

**Arguments of Plaintiff**

Plaintiff argues that it was error for the ALJ not to address plaintiff's severe emotional impairments before January, 2008 and should have found, at Step Three, that plaintiff met or equaled a Listing of Impairments in the Social Security regulations. He argues that based on plaintiff's testimony alone it was apparent that condition was long-standing. However, plaintiff has not shown that prior to January 2008, he had two or more marked limitations in any functional areas. (See ALJ opinion, Tr 23) Plaintiff's reports of his daily activities, his medical records, and his lack of mental health treatment make this conclusion insupportable. Substantial evidence supports the ALJ's finding at step 3 that plaintiff did not meet the Listings. It is plaintiff's burden to establish his disability. He offered no evidence that he had 2 or more

marked limitations in any functional areas. Indeed, his reports are to the contrary. In February 2006, plaintiff reported he read the Bible, attended church several times a week, went to the grocery store and mall, and drove a car. (TR at 23, 97) He did yard work with friends. Although plaintiff now contends that his ability to step outside the family was nonexistent, the record does not support this claim. There are no psychiatric examinations, reports, emergency room treatment, or other treatment records demonstrating that such limitations were present before January 2008. Before January 2008 plaintiff had reported no problems getting along with friends or family or authority figures. (TR 23, 103)

In addition, no medical testimony supports this position. Dr. Feldstein, not a treater but a one time examiner, does not opine as to plaintiff's past mental health history. Although great deference is to be given to medical opinions and diagnoses of treating physicians, Harris v. Heckler, 756 F.2d 431 (6th Cir. 1985), Dr. Feldstein is not such a physician. Further, the opinion of the treating physician must be based on sufficient medical data. Garner v. Heckler, 745 F.2d 383, 391 (6th Cir. 1984); Houston v. Secretary of HHS, 736 F.2d 365, 367 (6th Cir. 1984). Here, the Dr. Feldstein's conclusion contains no substantiating facts outside of his observation and interview of plaintiff on one occasion. Under such circumstances, the defendant is not required to credit such opinions. Cf..Villarreal v. HHS, 818 F.2d 461, 463 (6th Cir. 1987) The fact that the ALJ did so and found plaintiff disabled as of that date is a benefit to plaintiff. Determination of disability is ultimately the prerogative of the Commissioner, not the physician. Warner v. Commissioner of Social Security, 375 F.3d 387 (2004). Importantly, Dr. Feldstein did not offer any retrospective opinion. While neither a treating nor examining physician's opinion should be

dismissed merely because it is retrospective, there was no basis for such an opinion here and it was not offered.  *See Dousewicz v. Harris,* 646 F.2d 771, 774 (2d Cir.1981).

Plaintiff may have had some earlier limitations in terms of concentration, persistence and pace, and the ALJ took this into account.  Plaintiff reported in February, 2006, he could pay attention for a few minutes at a time. (TR 102)   The occupational therapy notes and other medical records fail to indicate that plaintiff had any problems concentrating on his exercises or rehabilitation. Despite being seen regularly and frequently by Dr. Burke, none of Dr. Burke's records indicate any evidence of mental limitation or incapacity. Nor is there any evidence of emotional lability or other mental health issues.  Plaintiff is described from time to time as pleasant, able to identify his complaints, reported that he was doing well, and could appropriately describe his physical difficulties.  None of his medical records even mentioned anything like the physical choking and involuntary gasping noticed by Dr. Feldstein. Dr. Feldstein, a one-time examiner, did not perform the mental status examination because it appeared to him that plaintiff was too self-preccupied to undertake it. While the ALJ credited Dr. Feldstein's opinion, there is no evidence that plaintiff established the criteria for disability prior to that date.

Plaintiff also argues that the ALJ improperly assessed his credibility.  Because determinations of credibility are peculiarly within the province of the ALJ, those conclusions should not be discarded lightly. Villarreal v. HHS, 818 F.2d 461, 463 (6th Cir. 1987)  Further, the medical record and other evidence did not support his allegations of significantly limiting impairments prior to January 21, 2008 (TR. 25)   When examined by Dr. Burke for his wrist

problems, it was noted that he spoke English fairly well unlike when he was seen for the psychiatric examination and stated that he could not speak English at all. (TR 269, 265) Plaintiff clearly had physical difficulties involving his wrist with a series of surgeries between 2004 to 2006, though he did well post operatively and regained substantial use of his wrist, hand, and grip strength. In none of these contacts with physicians did anyone report the kind of involuntary physical activities of which appeared in the psychiatric examination. This cuts against his credibility. Further, to the extent that plaintiff raised credible allegations of pain and limitation, the ALJ accommodated these by finding a residual functional capacity for only simple, unskilled, light work with limited lifting, carrying pushing and pulling with the left hand of not more than 10 pounds and restricted him to only occasional bilateral fingering and handling, and requiring no exposure to vibration. (TR. 24) It was proper for the ALJ to rely on the vocational expert's testimony regarding jobs that accommodated these limitations, and it is clear that the record supports the ALJ's findings.

After a careful review of all of the medical records and the briefs, it is recommended that the defendants' motion for summary judgment be granted, that of the plaintiff denied, and the decision denying disability benefits prior to January 21, 2008 be affirmed. The ALJ carefully considered the facts and circumstances of the relevant period, the medical records of treatment, and plaintiff's other activities. She reached a well supported conclusion that plaintiff could perform a limited range of sedentary work.

Accordingly, it is recommended that the defendant's motion be granted, that of the plaintiff denied, and decision denying benefits prior to January 21, 2008 be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Howard v. Secretary of HHS</u>, 932 F.2d 505, 508 (6th Cir. 1991); <u>United States v. Walters</u>, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

          S/Virginia M. Morgan
          Virginia M. Morgan
          United States Magistrate Judge

Dated: November 18, 2009

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on November 19, 2009.

s/J. Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan
